United States Court of Appeals, Eleventh Circuit.

No. 94-4979.

Alberto SAN PEDRO, Plaintiff-Appellant,

v.

UNITED STATES of America; Kendall Coffey, United States Attorney; United States Department of Justice, Immigration and Naturalization Service, District Director, Robert M. Moschorak; United States Department of Justice, Executive Office for Immigration Review, Director, David L. Milhollan; and United States Department of Justice, Executive Office for Immigration Review, Office of The Immigration Judge, Honorable Bruce W. Solow, and other individuals similarly situated, Defendants-Appellees.

April 9, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-0039-CIV-LCN), Lenore Carrero Nesbitt, Judge.

Before COX, Circuit Judge, DYER, Senior Circuit Judge, and GOETTEL[*], Senior District Judge.

DYER, Senior Circuit Judge:

This case arises out of a dispute concerning the scope of a plea agreement between the United States government and Alberto San Pedro ("San Pedro") and representations made by the government during plea negotiations. The district court granted summary judgment for the government holding that the United States Attorney and the Assistant United States Attorneys ("AUSAs") did not have authority to promise, as part of a plea bargain, that San Pedro would not be deported. The Immigration and Naturalization Service ("INS") was thus free to initiate deportation proceedings against San Pedro. We affirm.

I. BACKGROUND

---

[*]Honorable Gerard L. Goettel, Senior U.S. District Judge for the Southern District of New York, sitting by designation.

San Pedro is a citizen of Cuba and has been a lawful permanent resident of the United States since May 2, 1956. Following a federal grand jury indictment for bribery of a federal public official and conspiracy to commit bribery, he pled guilty to the conspiracy charge. The government concedes that the plea agreement expressly affords San Pedro transactional immunity. The written plea agreement contains an integration clause and does not mention the subject of deportation, but, according to San Pedro, the United States Attorney and AUSAs who negotiated on behalf of the government represented, as part of the agreement, that the government would not institute deportation proceedings against him. Nevertheless, INS filed an Order to Show Cause why he should not be deported. San Pedro responded by filing the instant Petition for Writ of Mandamus or Prohibition and Temporary Restraining Order, seeking a declaration that the instigation of deportation proceedings violated the plea agreement because the government had represented that his transactional immunity[1] included a promise of

---

[1]The relevant clause of the plea agreement provides that:

> The United States, in consideration of the defendant's compliance with the terms and conditions of this Plea Agreement, agrees not to prosecute ALBERTO SAN PEDRO for any other offenses based upon any evidence revealed in the investigation that led to the charges in the subject indictment. In addition, the United States agrees not to prosecute ALBERTO SAN PEDRO based upon any other evidence of which it is now aware or which, with the exercise of reasonable diligence, it could presently become aware through communication with state or local enforcement personnel.

San Pedro argued that the agreement "not to prosecute ... for any other offenses" included a promise not to deport him because, as part of the basis for the bargain, he dropped his appeal of two state court convictions that predicated the show cause order.

non-deportation.

The government filed a motion to dismiss, which the court converted to a motion for summary judgment. In contesting San Pedro's claim for breach of the plea agreement, the government contended that San Pedro was never promised non-deportation, and even if he was, the promise did not bind the INS because the United States Attorney and AUSAs had no authority to make such promise. The district court found that the United States Attorney's Manual ("USAM") required that the United States Attorney obtain approval from the Department of Justice before conducting negotiations involving deportation. Because the government had produced no evidence concerning whether the prosecutor sought authorization from the Department of Justice, the court denied the government's first summary judgment motion.

To correct the deficiency, the government filed two more motions for summary judgment, again raising the question of whether the United States Attorney and the AUSAs had the authority to promise San Pedro he would not be deported. The district court determined there was a dispute as to whether the government made the promise but that the decisive legal issue was whether the United States Attorney had the authority to promise not to deport a criminal defendant as a condition of a plea bargain. The court concluded that nothing in the USAM or the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.,* ("INA") vested the United States Attorney with that authority. Thus, any promise regarding deportation did not bind the INS and the court entered summary judgment for the government. This appeal ensued.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo.* *Forbus v. Sears Roebuck & Co.,* 30 F.3d 1402, 1404 (11th Cir.1994). A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate "if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to [the non-moving party], could not reasonably return a verdict in [that party's] favor." *Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court stated: "[W]hen a plea rests in any significant degree on a promise or agreement of a prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. "When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea." *Id.* at 268, 92 S.Ct. at 502 (Marshall, J. concurring in part and dissenting in part). Furthermore, a guilty plea " "must stand unless induced by ... misrepresentation (including unfulfilled or unfulfillable promises)....' " *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984) (quoting *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

We are mindful of the due process considerations underlying these principles, and note that San Pedro does not question the voluntary character of his guilty plea. He does not seek to have the plea vacated; rather, he seeks to enforce a promise allegedly made during plea negotiations. "[T]he general rule requiring governmental adherence to promises made during plea negotiations is subject to two conditions. First, the agent making the promise must be authorized to do so, and second, the defendant must detrimentally rely on the promise. If either condition is lacking, then the agreement is unenforceable and the government may withdraw its offer." *United States v. Kettering,* 861 F.2d 675, 677 (11th Cir.1988) (citing *Johnson v. Lumpkin,* 769 F.2d 630 (9th Cir.1985)). In other words, to enforce a promise made during plea negotiations, there must have been a valid, binding agreement in the first instance upon which the defendant relied in deciding to forego his constitutional rights and plead guilty. For an agreement to be valid and binding, the agent must possess actual authority to make the promise—either express authority or authority implied in or incidental to a grant of express authority. *Thomas v. INS,* 35 F.3d 1332, 1338 (9th Cir.1994). "Estoppel and apparent authority normally will not substitute for actual authority to bind the United States government." *Id.* (citing *Utah Power & Light Co. v. United States,* 243 U.S. 389, 408–09, 37 S.Ct. 387, 391–92, 61 L.Ed. 791 (1917); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 2–3, 92 L.Ed. 10 (1947)). *But see Houck ex rel. United States v. Folding Carton Administration Comm.,* 881 F.2d 494, 501 (7th Cir.1989). Therefore, assuming San Pedro was promised

non-deportation,[2] the INS is not bound unless the United States Attorney and the AUSAs had either express or implied actual authority to make that representation.

Subsequent to the district court's order, the Ninth Circuit held in *Thomas v. INS* that the INS was bound by a cooperation agreement not to seek deportation of a convicted felon. 35 F.3d at 1335. In *Thomas* the defendant and an AUSA entered into a letter agreement where the defendant was to provide the government with information about narcotics trafficking and work as a cooperating witness for two years. In return, the government agreed not to oppose Thomas' motions for reduction of sentence or relief from deportation. Nonetheless, after his conviction, the INS initiated deportation proceedings. *Id.* at 1335-36. The court reasoned that, despite the AUSA's lack of express authority to bind the INS to the agreement, Congress, through its grant of power "to prosecute for all offenses against the United States," 28 U.S.C. § 547(1) (1988), had given the United States Attorney implied actual authority to bind the "government," and thus the INS, not to oppose motions for relief from deportation. *Id.* at 1339-41. The court found that a United States attorney's authority to obligate the government "as part of a plea bargain is incidental to his statutory authority to prosecute crimes." *Id.* at 1340. According to the *Thomas* court, the United States attorneys need not receive authority from the attorney general to bind the INS to their agreements with

---

[2]The parties dispute whether such promise was made, however, the factual dispute is irrelevant in view of our holding that the United States Attorney and the AUSAs lacked authority to bind the INS. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

defendants because they have already received such authority from Congress. *Id.* at 1338-40. Absent any express limitation on that authority by the attorney general, therefore, United States attorneys are free to bind the INS (and presumably other government agencies) to agreements with defendants so long as the agreements fall within the scope of the broad language of § 547(1). *Id.* at 1338-41.

In *Margalli-Olvera v. INS,* 43 F.3d 345 (8th Cir.1994), the Eighth Circuit adopted the reasoning of *Thomas.* There the AUSA agreed that the government would recommend against deportation if the defendant participated in a debriefing; otherwise, the government would remain silent regarding deportation. *Id.* at 348. In upholding the authority of the AUSA to bind the INS to the plea agreement, the court apparently extended the holding of *Thomas* to say that a United States attorney has authority to bind all governmental agencies to plea agreements. *See id.* at 353 ("[A]n Assistant United States Attorney enters into a plea agreement on behalf of the United States government as a whole. Accordingly, promises made by an Assistant United States Attorney bind all agents of the United States government. Therefore, we hold that unless a plea agreement uses specific language that limits the agents bound by the promise, ambiguities regarding the agencies bound by the agreement are to be interpreted to bind the agency at issue."). If this is a correct reading of *Margalli,* we reject the suggestion that a government attorney has authority to bind all government agencies to plea agreements by virtue of § 547(1).

We agree that Congress did not expressly grant the United

States attorney authority to bind the INS, or any other governmental agency. *See* 28 U.S.C. § 547 and *Thomas,* 35 F.3d at 1338-39. Our agreement with the Ninth Circuit, however, ends there. We believe *Thomas* incorrectly harmonized the statutes that empower the United States attorneys and the attorney general,[3] and failed to consider that the express authority to enforce immigration law is concentrated solely in the attorney general. It is unclear to this court, as it was to the district court, why Congress would have granted United States attorneys the authority to enter into agreements with criminal defendants that bind the INS while simultaneously granting the authority to enforce the specific provisions of the immigration laws to the attorney general in the INA. We therefore follow the principle, upheld by the Supreme Court on numerous occasions, that a specific statute takes precedence over a more general one. *See, e.g., Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978); *Brown v. General Services Administration,* 425 U.S. 820, 834, 96 S.Ct. 1961, 1968-69, 48 L.Ed.2d 402 (1976).

Congress placed the responsibility of enforcing the INA in the hands of the attorney general, who in turn is permitted to delegate her powers to the commissioner of the INS. 8 U.S.C. § 1103(a) and (b); 8 C.F.R. § 2.1 (1995); *INS v. Phinpathya,* 464 U.S. 183, 185 n. 1, 104 S.Ct. 584, 587 n. 1, 78 L.Ed.2d 401 (1984). The attorney

---

[3]*Cf.* 28 U.S.C. § 547(1) (granting United States attorneys the power to prosecute) with 28 U.S.C. § 515(a) (authorizing the attorney general to conduct "any kind of legal proceeding" which United States attorneys are authorized by law to conduct) and *see* 35 F.3d at 1338-39 (attorney general and United States attorney have overlapping authority expressly granted by Congress).

general's authority includes the power to deport certain classes of aliens pursuant to 8 U.S.C. § 1251(a). Only officers and employees of INS may initiate deportation proceedings by filing an Order to Show Cause with the Office of the Immigration Judge, 8 C.F.R. § 242.1(a) (1995), and only officers authorized in § 242.1(a) may cancel an Order to Show Cause. 8 C.F.R. § 242.7 (1995). Being neither an INS officer nor employee, a United States attorney cannot initiate or terminate deportation proceedings. It follows, therefore, that a United States attorney and AUSAs cannot preclude a deportation proceeding by promising an alien defendant that he will not be deported because such action would constitute an impermissible exercise of authority over the INS. To hold otherwise is to say that the United States attorney's general power of prosecution can usurp the attorney general's specific power to deport certain classes of aliens, which we do not believe Congress intended. Thus, reading 28 U.S.C. § 547(1), 28 U.S.C. § 515(a) and 8 U.S.C. § 1103(a) together, we hold that the power to promise a criminal defendant during plea negotiations that he will not be deported is vested in the attorney general.

For the United States attorney to promise a criminal defendant non-deportation, therefore, the attorney general must have delegated the power to him. The parties dispute whether such a delegation has been made, but they agree the only possible sources of delegation are §§ 9-16.020[4] and 9-73.510[5] of the USAM.

---

[4]USAM § 9-16.020 provides that:

> U.S. Attorneys should also be cognizant of the sensitive areas where plea agreements involve either extradition or deportation. No U.S. Attorney or AUSA

We cannot improve upon the district court's reasoning on this issue:

> Upon review, the Court finds that [9-16.020 and 9-73.510], whether read independently or together, do not constitute a delegation of authority to U.S. Attorneys and AUSAs from the Attorney General. There are several reasons for this. For instance, although the government argues to the contrary, the Court is not convinced that, as currently drafted, the USAM could constitute the source of such a delegation. It is well established that the USAM only provides guidance to officials at the Department of Justice and does not have the force of law. *U.S. v. Carson,* 969 F.2d 1480, 1495 n. 8 (3d Cir.1992) ("Though the Manual is not binding on United States Attorneys, it is designed to serve as a guide to their conduct...."); *United States v. North,* 1988 WL 148491, 1988 U.S. Dist. Lexis 16017 (D.D.C.1988) ("The [USAM] is not published in the United States Code or Code of Federal Regulations and none of its provisions are promulgated through the Federal Register. It does not have the force of law."); *United States v. Huslage,* 480 F.Supp. 870, 873 (W.D.Pa.1979) ("The procedures set forth in the [USAM] are not binding on the district offices...."). The USAM itself states that:

>> The Manual provides only internal Department of Justice guidance. *It is not intended to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.* Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.

> USAM § 1-1.000 (emphasis added). San Pedro relies on the USAM as the source of a U.S. Attorney/AUSA's authority to promise

---

has the authority to negotiate regarding an extradition or deportation order in connection with any case. If extradition has been requested or there is reason to believe that such a request will be made, or if a deportation action is pending or completed, U.S. Attorneys or AUSAs, before entering negotiations regarding such matters, must seek specific approval from the Assistant Attorney General, Criminal Division.

[5]USAM § 9-73.510 provides that:

In a criminal case, the United States Attorney should not as part of a plea agreement or an agreement to testify, or for any other reason, promise an alien that he/she will not be deported, without prior authorization from the Criminal Division.

non-deportation and, thus, as the ultimate source of his right against deportation.  The underlined language makes clear that the USAM cannot serve as the source of such a right, however.  Put another way, the language of section 1-1.000 establishes that the Attorney General did not intend the USAM to serve as the vehicle for the delegation of authority to U.S. Attorneys and AUSAs.

[12] Even if the USAM could serve as the source of a delegation of the Attorney General's authority to promise non-deportation, the language in sections 9-16.020 and 9-73.510 is insufficient to effect such a delegation.  In order to be effective, a delegation of statutory authority from the Attorney General to other federal officials must be both *explicit* and *affirmative*.  [ *See United States v. Pees,* 645 F.Supp. 697, 704 (D.Colo.1986) ("If the attorney general were not required to execute an affirmative act in subdelegating his authority, the authority of other administrative agencies *vis. a vis.* the authority of the attorney general would be hopelessly ambiguous and unworkable.") ]; *see also, United States v. Touby,* 909 F.2d 759, 770 (3d Cir.1990) ( [the Attorney General must explicitly subdelegate authority for the subdelegatee to be empowered to act] ), *aff'd,* 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991).

The need for express delegations in the area of immigration and naturalization is particularly acute.  The area is one in which the Attorney General has already delegated significant authority to another administrative agency—the INS.  As a result, the Attorney General must take special care to make delegations of authority in this area to officials outside INS with particular clarity.  Otherwise, confusion, and often litigation, concerning the scope of the authority of the INS and that of the other delegatee will likely result.

[13] Confusion of this kind is at the heart of this case.  As noted, the Attorney General has delegated [authority] to the INS includ[ing] the authority to initiate and prosecute deportation proceedings.  *See* 8 C.F.R. § 2.1 [1995].  Absent a clear, explicit delegation of authority to U.S. Attorneys and AUSAs of the authority to promise non-deportation to criminal defendants, officials at the INS may initiate deportation proceedings against a particular defendant without considering whether an AUSA or U.S. Attorney has promised the defendant non-deportation as part of a plea agreement.  Protracted litigation arising out of the ambiguity concerning the authority of the U.S. Attorneys and AUSAs is the likely result.  That is precisely what occurred here.

[14] Neither section 9-73.510 no[r] section 9-16.020 contain an explicit, affirmative delegation to U.S. Attorneys and AUSAs of the Attorney General's authority to promise non-deportation.  To the contrary, both sections expressly *limit* the authority of U.S. Attorneys and AUSAs to make such promises.  Section 9-73.510 is particularly clear.  The section unequivocally provides that,

unless a U.S. Attorney obtains prior authorization from the Criminal Division of the Department of Justice, the U.S. Attorney should not *promise* an alien as part of a plea agreement that he or she will not be deported. Section 9-16.020 goes even farther. The section provides that, if a deportation action against a criminal defendant is pending or completed, a U.S. Attorney or AUSA cannot even *negotiate* regarding deportation without obtaining *specific approval* from the Assistant Attorney General of the Criminal Division of the Department of Justice. Nothing in these sections remotely suggests that a U.S. Attorney or AUSA has the authority to negotiate, or to promise anything, concerning deportation absent such approval.[6]

### III. CONCLUSION

Based on the foregoing, we conclude the United States Attorney and the AUSAs who negotiated the plea agreement with San Pedro did not have the authority to promise that he would not be deported for that authority was vested in the attorney general. We further conclude that §§ 9-16.020 and 9-73.510 of the USAM do not constitute a delegation of that authority to the United States Attorney and AUSAs. Summary judgment for the government is therefore AFFIRMED.

GOETTEL, Senior District Judge, dissenting:

I respectfully dissent. The principal issue in this case is not the authority of the United States Attorney's Office with

---

[6]The dissent posits that the issue of whether the attorney general expressly delegated authority to the U.S. Attorney in this case is necessarily subsumed in the factual dispute of whether a promise was ever made to San Pedro, and thus summary judgment was precluded. This point is irrelevant for three reasons. First, we assume for summary judgment purposes that the promise was made. Second, the district court specifically found that the government produced unrebutted evidence that the prosecutors who negotiated the plea bargain never obtained such authorization. Moreover, San Pedro conceded in his initial brief that the U.S. Attorney and AUSAs never contacted anyone in the Department of Justice for actual authorization to promise nondeportation. Because San Pedro did not contend in the district court or on appeal that the attorney general authorized the promise, there is no factual dispute precluding summary judgment.

respect to deportation. Rather, the critical issue is whether there has been a violation of San Pedro's fundamental right to due process if, in fact, the government reneged on a prosecutorial promise made as part of San Pedro's plea agreement. *See Bemis v. United States,* 30 F.3d 220, 222 (1st Cir.1994) ("[T]he crucial question is not whether the Government had the authority to carry out the promise which [petitioner] claims he understood it to make, but whether it did in fact make such a promise," citing *United States v. Cook,* 668 F.2d 317, 320 (7th Cir.1982)[1]).

This appeal arises from the district court's grant of summary judgment in favor of the government, in an action brought by San Pedro to force the government to abide by promises relating to his non-deportation that it allegedly made as part of a plea agreement.[2] Exactly what those promises are we do not know.

---

[1]In *United States v. Cook,* 668 F.2d 317 (7th Cir.1982), the issue before the court was whether a defendant should be allowed to plead anew to charges against him where the government had breached a plea agreement. The government had agreed to offer nothing in aggravation of the defendant's sentence. Nevertheless, the probation officer who prepared the presentence report used damaging background information from the government's files. The government claimed that it was without authority to withhold relevant information from the sentencing court and argued that, therefore, no breach could have occurred. The Seventh Circuit held that although there was substantial doubt as to whether the government could lawfully withhold relevant information, that issue was not dispositive. "Regardless of whether the Government has the authority to withhold relevant information, if it did in fact promise to do so, then [the defendant] is nevertheless entitled to relief." *Id.* at 320 (citations omitted).

[2]In his Complaint, San Pedro alleges as follows:

> 14. Plaintiff would not have entered a Plea Agreement requiring him to withdraw his appeals from state convictions but for the representation of the United States of America that his transactional immunity precluded the institutions [sic] of

However, in ruling on a motion for summary judgment, the court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party, San Pedro. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986). And if, in fact, such promises were made, as San Pedro claims, due process requires the government to adhere to the promises that it made as part of the plea agreement. *United States v. Harvey,* 869 F.2d 1439, 1443 (11th Cir.1989); *United States v. Weiss,* 599 F.2d 730, 737 (5th Cir.1979).

These due process concerns the majority has ignored. They have held in essence that, whatever the promises, the United States Attorney's Office did not have the authority to make such promises and, therefore, these promises need not be enforced.[3] I cannot

deportation proceedings against him for those convictions and that if not covered by the transactional immunity the United States of America would do everything possible to preclude the institution of deportation proceedings.

In its Answer, the government responds: "Defendants are without sufficient knowledge to either admit or deny the allegations in paragraph fourteen. Consequently, the allegations are denied."

[3]The majority relies on the case of *United States v. Kettering,* 861 F.2d 675 (11th Cir.1988), in support of its holding. *Kettering* is distinguishable. In that case, the defendant sought to enforce a *proposed* plea agreement discussed between defense counsel and a DEA agent. The agreement was never approved by the Assistant United States Attorney in charge of the case, who so informed defense counsel. Defense counsel then filed a motion to enforce the proposed agreement prior to the defendant's entering a plea, which motion was heard at the time of the arraignment. The court denied the motion and allowed the defendant to withdraw his guilty plea entered at the arraignment. In the instant case, the promises were allegedly made directly by the United States Attorney's Office and were allegedly relied upon by San Pedro in entering his guilty plea, withdrawing two pending state court appeals, and in cooperating with the government for over one year.

agree.

San Pedro is a citizen of Cuba and has been a lawful permanent resident of the United States since 1956. On October 7, 1988, a federal grand jury in the Southern District of Florida returned a three-count indictment against San Pedro, charging him with two counts of bribery and one count of conspiracy to commit bribery. At that time, the United States Attorneys' Office for the Southern District of Florida was involved in an extensive investigation of corruption of various elected officials in the City of Hialeah, Florida. Because of San Pedro's involvement with "the players in Hialeah politics," the government sought to use San Pedro as a government witness. *United States v. San Pedro,* 781 F.Supp. 761, 765 (S.D.Fla.1991). Thus, San Pedro was able to negotiate a plea agreement with the United States Attorney's Office under which he pled guilty to the conspiracy count, and the government dismissed the remaining counts against him. In return, San Pedro agreed to provide the government with information concerning all criminal activities within the United States of which he was aware. He also agreed to voluntarily dismiss two pending state court appeals from criminal convictions for conspiring to traffic in cocaine and unlawful compensation.

Under the express terms of the written Plea Agreement with San Pedro, the United States agreed not to prosecute San Pedro for any other offenses based upon any evidence revealed in the investigation that led to the indictment, and upon any evidence of which it was then aware or could be aware in the exercise of due diligence. The government concedes that the plea agreement

provided San Pedro with transactional immunity. *San Pedro v. United States,* No. 93-0039-CIV-NESBITT, Order at 2 (S.D.Fla. Aug. 23, 1993). Moreover, according to San Pedro, the Assistant United States Attorneys negotiating on behalf of the government represented to him that, as part of the agreement, the government would not institute deportation proceedings against him. The government denies that such a promise was made.

At the sentencing hearing, which had been continued to allow San Pedro to cooperate with the government, the government recommended that San Pedro be released immediately and placed on probation for four to six months to facilitate his continued cooperation. The government further recommended that, irrespective of the sentence imposed, he be immediately eligible for parole pursuant to 18 U.S.C. § 4205(b)(2). The district judge adopted the government's recommendation of immediate parole eligibility but still sentenced San Pedro to thirty (30) months in prison. He was credited with all of the time that he served in federal custody as a result of these charges. San Pedro was ultimately paroled on December 20, 1989. *San Pedro,* 781 F.Supp. at 765. The government described San Pedro's contribution to the government's investigation of the corruption in Hialeah politics as substantial, truthful, and invaluable. *Id.* at 765-66.

On December 22, 1989, two days after San Pedro's parole, the Immigration and Naturalization Service (the INS) issued an Order to Show Cause, charging San Pedro with being deportable from the United States due to the commission of various crimes. On or about November 10, 1992, the INS filed the Order to Show Cause with the

Office of the Immigration Judge in Miami, Florida.[4]  On January 11, 1993, San Pedro filed a petition for writ of mandamus or prohibition and temporary restraining order, asking the district court to declare the deportation proceedings unlawful and to enjoin the deportation proceedings from going forward based on the prosecutorial promises allegedly made to him as part of his plea agreement.

The district court never resolved the issue of what promises, if any, were made to San Pedro regarding non-deportation.  Indeed, in denying the government's first motion for summary judgment, the district court, applying the principles set forth in *United States v. Rewis,* 969 F.2d 985, 988 (11th Cir.1992),[5] held this issue was

---

[4]From the Sworn Statement of San Pedro's immigration attorney, Teofilo Chapa, Esq., dated April 6, 1993, which was filed in this case, it appears that this three-year delay between the issuance of the Order to Show Cause and the filing of the Order with the Office of the Immigration Judge in Miami was due at least in part to San Pedro's cooperation in the investigation and trial of Raul Martinez, the Mayor of Hialeah, as well as ongoing communications between Attorney Chapa and the INS. *See United States v. San Pedro,* 761 F.Supp. at 765.

[5]In *United States v. Rewis,* 969 F.2d 985, 988 (11th Cir.1992), this court held that whether the government violated the plea agreement is to be judged according to the defendant's reasonable understanding at the time he entered the plea.  If the defendant's understanding is disputed by the government, then it is the function of the court to determine the terms of the plea agreement according to an objective standard.  This court cautioned against a "hyper-technical reading of the written agreement" and "a rigidly literal approach in the construction of the language." *Id.* (citations omitted).  *Rewis* further instructs that the written agreement should be viewed against the background of the negotiations and should not be read to directly contradict an oral understanding. *Id.* (citations omitted).  Finally, *Rewis* holds that an ambiguous plea agreement must be read against the government and that this method of interpretation must be strictly adhered to because a plea agreement constitutes a waiver of significant constitutional rights. *Id.*

"clearly one of fact and must be resolved by the trier of fact." *San Pedro* Order of Aug. 23, 1993 at 5.  The district court found as follows:

> The Court finds the terms "prosecute ... for any other offenses" to be ambiguous.  Deportation involves the imposition of a specific sanction—expulsion from the country. Moreover, in the present case, there is a close link between the sanction and San Pedro's history.  As part of the Plea Agreement, San Pedro agreed to withdraw his appeals of two state convictions.  These convictions form the basis upon which the government seeks to deport him.  San Pedro might have thus reasonably regarded deportation as an additional sanction for the offenses for which he was convicted in state court and might therefore reasonably have construed the terms "prosecute ... for any other offenses" to cover the initiation of deportation proceedings.
>
> Even if this were not the case, the Court would not enter summary judgment in favor of the government without receiving evidence concerning the government's alleged representations to San Pedro.  As noted, the Court is obligated to interpret the Plea Agreement in the light of the negotiations preceding the execution of the Agreement.  If agents of the government did promise San Pedro that he would not be deported, then it might well have been reasonable for him to believe that the phrase "prosecute ... for any other offenses" covered deportation proceedings.  The representations made by the government prior to the execution of the Plea Agreement are thus not only not irrelevant, they may have a pivotal bearing on what San Pedro might reasonably have interpreted that agreement to mean.

*Id.* at 7-8.

I believe the district court was correct in this regard. Although this is not the order being appealed, even after two additional summary judgment motions were filed and decided, this critical and pivotal issue was never resolved.  The district court, as the majority here, ultimately held that the United States Attorney's Office did not have the authority to promise non-deportation and, thus, never reached the issue of what promises, if any, regarding non-deportation were made by the government.  *San Pedro v. United States,* No. 93-0039-CIV-NESBITT

(S.D.Fla. Aug. 18, 1994). For purposes of this appeal, we must assume that such a promise was made. Even if we conclude that the United States Attorney's Office lacked the authority to make the promise, there still is a violation of San Pedro's constitutional right to due process in the breaching of a prosecutorial promise that was part of a plea agreement. Thus, rather than focusing on the authority issue as the district court and the majority have done, we must look instead to the fundamental due process issue.

As this Court held in *In re Arnett,* 804 F.2d 1200, 1202-03 (11th Cir.1986), it is incumbent upon this Court to determine whether the government's actions are inconsistent with what the defendant [San Pedro] reasonably understood when he entered his guilty plea. A guilty plea is more than an admission of past conduct; it is a waiver of the right to a trial by jury, and in this case, a waiver of the right to appeal. To constitute a valid waiver of substantial constitutional rights, a guilty plea must represent a voluntary, knowing, intelligent act and must be offered with sufficient awareness of likely consequences. *Id.* "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." *Mabry v. Johnson,* 467 U.S. 504, 507-8, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984) (footnote omitted). Given such implications, this Circuit, as have others, has required the government to adhere strictly to the terms of a plea agreement. *In re Arnett,* 804 F.2d at 1202-03; *see also*

*Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973). Thus, unlike situations involving the normal commercial contract, when a plea is made based upon prosecutorial promises, due process requires that the government adhere to the terms of any plea agreement that it makes. *United States v. Pelletier,* 898 F.2d 297, 302 (2d Cir.1990) (citing *Mabry v. Johnson,* 467 U.S. at 509, 104 S.Ct. at 2547).

The starting point for analyzing issues involving the breach of a plea agreement by the government is the Supreme Court's decision in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). *See In re Arnett,* 804 F.2d at 1202. In *Santobello* the Supreme Court held that, as part of the criminal justice process, accepting a plea of guilty "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. The circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499. In that case, finding that the prosecution, through inadvertence, had not lived up to its plea bargain, the Supreme Court vacated the judgment and remanded to the state court to determine whether the criminal defendant should be re-sentenced with the prosecutor keeping his bargain, or whether the defendant should be allowed to withdraw his guilty plea. As the majority opinion notes, it matters not whether the promise is unfulfillable, *Mabry v. Johnson,* 467 U.S. at 509, 104 S.Ct. at 2547 (quoting *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25

L.Ed.2d 747 (1970)); there is nevertheless a guilty plea induced by a misrepresentation.

This is not the first time San Pedro has been confronted with the government's breach of its plea agreement. *See San Pedro,* 781 F.Supp. 761. In 1991, San Pedro was indicted for RICO violations. He moved to dismiss the indictment on the ground that it violated his plea agreement with the government, the same plea agreement that is the subject of this appeal. The district court, in granting San Pedro's motion, found that the government had breached its duty of good faith and fair dealing and that it had failed to live up to its obligation of not prosecuting San Pedro. *Id.* at 773-75. In a strongly worded opinion, the court concluded:

> The Court believes that the government "set up" San Pedro in an effort to renege on its promise of immunity, after it had derived substantial and invaluable cooperation from him over a fourteen month period.
>
> Having received its benefit from the bargain, namely San Pedro's cooperation, the government sought to deny the defendant [San Pedro] the benefit for which he had bargained—immunity from prosecution.
>
> Such conduct on the part of the government is simply unfair and this Court of the United States will not permit it.
>
> In a day when the confidence and trust of the American people in their government ebbs, it is critical that the United States government keep its word and live up to its obligations. If doing so means that it must forego convicting one person of a crime, that is a small price to pay to preserve the integrity of our institutions.
>
> The foundation of the Republic will not crack if the United States fails to put Alberto San Pedro in a federal prison. It will shatter, however, if the American People come to believe that their government is not to be trusted. A deal is a deal, and the government's word must be its bond.

*Id.* at 776.

The principle that "[a] deal is a deal, and the government's

word must be its bond," *id.,* must guide us in this appeal. To paraphrase the Fourth Circuit's decision in *United States v. Carter,* 454 F.2d 426 (4th Cir.1972) (en banc), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974), there is more at stake than just whether San Pedro should be deported. "At stake is the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government." *Id.* at 428.

From the earlier *San Pedro* decision, we also know that, in a letter dated October 3, 1989, an Assistant United States Attorney urged the Assistant District Director of the INS to withhold or suspend deportation proceedings against San Pedro because of his cooperation. *San Pedro,* 781 F.Supp. at 765-66. Additionally, in the instant case, San Pedro's immigration attorney submitted a sworn statement detailing other efforts undertaken by the United States Attorney's Office to have the deportation proceedings terminated by the INS.[6] In light of the action taken by the United States Attorney's Office, it would appear that something regarding non-deportation was promised to San Pedro, and that, at least for some period of time, the INS honored the request of the United

---

[6]Attorney Teofilo Chapa, in his Sworn Statement dated April 6, 1993, testified that Assistant United States Attorney Steven Cheykin wrote the District Director of the INS on June 5, 1990, asking the INS to consider San Pedro's cooperation and to terminate the deportation proceeding. (Sworn Statement of Teofilo Chapa, Esq., at 13-15). His letter ends with a statement that "[y]ou can be assured that in the future your office will be consulted regarding any proposed plea or cooperation agreement the terms of which may affect matters within the jurisdiction of the Immigration and Naturalization Service." *Id.* at 14-15. This statement could well be read to imply that in this instance the United States Attorney's Office made promises to San Pedro regarding deportation without consulting the INS.

States Attorney's Office in that regard.

There is also binding legal precedent in this Circuit concerning a prosecutor's breach of a plea agreement involving deportation and/or extradition, which precedent cannot be ignored.[7] *See Geisser v. United States,* 513 F.2d 862 (5th Cir.1975), *after remand,* 554 F.2d 698 (5th Cir.1977), *after remand,* 627 F.2d 745 (5th Cir.1980), *cert. denied sub nom. Bauer v. United States,* 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981). In that case, the Department of Justice Organized Crime Section entered into a plea bargain with two criminal defendants under which they would reveal everything that they knew regarding a drug smuggling conspiracy and would testify at the trials of the other conspirators. In turn, the government promised that they would be reindicted on lesser offenses carrying maximum sentences of seven years, that they would be paroled in three years, and that the government would use its "best efforts" to avoid their deportation[8] to France or Switzerland. When it appeared that the Department of Justice was no longer going to live up to its plea bargain as to extradition, a petition for habeas corpus and injunctive relief was filed. The Fifth Circuit found that the federal government had an obligation to carry out the plea bargain made. Although there was considerable controversy as to what the prosecutors in *Geisser* had

---

[7]Decisions of the Fifth Circuit decided prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit under *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981).

[8]Although the plea bargain stated "deportation", the issue was extradition which is subject to specific international obligations, while deportation is essentially at the option of the deporting country.

promised, ultimately it was determined that the plea bargain only obligated prosecutors to use their "best efforts" to avoid the return of the petitioner to Switzerland,[9] and the government was ordered by the court to live up to its end of the bargain.

The case was remanded for the district court to determine what had been done with respect to the Justice Department's promise to use best efforts. Numerous letters were sent from the Department of State to the Swiss government and Swiss embassy. Finally, after two more appeals, the Fifth Circuit determined that the government had lived up to its agreement to use best efforts and that this agreement could not override a century-old treaty between the United States and Switzerland requiring extradition of the defendant.[10] As the late Chief Judge Brown wrote in *Geisser,* 513 F.2d at 863, "[t]his is an extraordinary case calling for

---

[9]The district court found in the first instance that there was a specific, definite agreement that the petitioner would be deported to some country other than Switzerland or France. After setting aside and enjoining the execution of the extradition order, the district judge directed that, if it was determined that the petitioner should be deported, it would be only to an "acceptable" country—not France, Switzerland, or the possessions of either. *Geisser,* 513 F.2d at 868. On appeal, the Department of Justice insisted that the deportation-extradition commitment was not the absolute one found by the district court but the more limited commitment to use its "best efforts." *Id.; Geisser,* 554 F.2d at 699. The Fifth Circuit, through Judge Brown, asked the government for an "authoritative declaration of the position of the United States Government—not just that of one or more departments or agencies;" *Geisser,* 513 F.2d at 869; and remanded for further hearings on the question of "just what has been done with the promise "to use our best efforts.' " *Id.* at 872.

[10]It is significant that in *Geisser* different departments within the government were involved (the Department of State and the Department of Justice), yet the Fifth Circuit still required the two departments to live up to the agreement made by the Department of Justice, whereas the instant case involves different arms of the same department.

extraordinary action. It is a case of the great United States going back on its word in a plea bargain made by the Department of Justice which assured the Government vital indispensable evidence leading to conviction of principals in a grand scale international heroin importing conspiracy. The effect of part of the bargain was that the defendant-turned-states-evidence would not be deported...." *See also Martin v. Warden, Atlanta Pen,* 993 F.2d 824, 829 n. 9 (11th Cir.1993) (recognizing that a defendant has a valid constitutional claim if the government has not complied with its obligations under plea agreements even though such may conflict with the United States' obligation to a treaty partner). San Pedro's allegations, if true, are no less serious and demand that this court ensure that his constitutional rights have not been violated.

If it is ultimately determined that a prosecutorial promise of non-deportation was made, then San Pedro is entitled to relief. *United States v. Yesil,* 991 F.2d 1527, 1532 (11th Cir.1992). Defaulted plea bargains must be remedied. *Geisser,* 513 F.2d at 871. So long as a prosecutorial promise remains unfulfilled, the plea on which it was based is involuntary and, therefore, unconstitutional unless the breach is remedied. *Geisser,* 554 F.2d at 705. Relief may be in the form of specific performance of the plea agreement or in the opportunity to withdraw the guilty plea. *Id., citing Santobello,* 404 U.S. at 263, 92 S.Ct. at 499. *See also Geisser,* 513 F.2d at 871; and *Geisser,* 554 F.2d at 704-705.

The majority notes that San Pedro does not seek one of the two remedies available under *Santobello,* namely, the withdrawal of his

guilty plea. To allow San Pedro to withdraw his guilty plea is no remedy at all, for he has already served his sentence; he has given the government invaluable cooperation over a fourteen month period; and he has withdrawn his appeals of the two state court convictions. Although fashioning an appropriate remedy is left to the sound discretion of the trial court, *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499, it appears that the only remedy remaining, if in fact such a promise was made, is to enforce it. *Geisser,* 513 F.2d at 871. But, again, we must first know exactly what that promise was.

Clearly the United States Attorney's Office did not have the express authority to promise a criminal defendant that he would not be deported as part of a plea bargain. However, it is not necessary to go as far as the Ninth Circuit did in *Thomas v. INS,* 35 F.3d 1332 (9th Cir.1994), and hold that the authority to prosecute all offenses against the United States found in 28 U.S.C. § 547(1) (1988) gives the United States Attorney the implied actual authority to bind the government including the Immigration and Naturalization Service. *Id.* at 1339-41. Nor is it necessary to go as far as the Eighth Circuit did in *Margalli-Olvera v. INS,* 43 F.3d 345 (8th Cir.1994), in holding that the United States Attorney has authority to bind all governmental agencies to plea agreements.

I agree with the majority that the power to promise a criminal defendant in a plea bargain that he will not be deported is vested in the Attorney General.[11] I also agree with the lower court that

---

[11]The Immigration and Naturalization Act, 8 U.S.C. § 1103, contains one of the broadest delegations of authority by Congress. *Jean v. Nelson,* 711 F.2d 1455 (11th Cir.1983), *aff'd,*

unless the United States Attorney obtains prior authorization from the Criminal Division of the Justice Department, the United States Attorney should not promise an alien as part of a plea agreement that he will not be deported. The majority then notes that there is no evidence that the United States Attorney or the Criminal Division ever authorized such a promise. That is part of the factual question of whether they ever made such a promise, which in my opinion precludes our affirming the grant of summary judgment in favor of the government. Since the government denies having made the promise, it follows that they would not have sought approval. However, the plaintiff would not know this. San Pedro claims that he was made a promise and there is no way that he would know whether or not the proper authorization had been obtained. Clearly the Attorney General, as head of the Department of Justice which includes both the Office of United States Attorneys and the Immigration and Naturalization Service, could have authorized the United States Attorney's Office to make such a promise.[12]

---

472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). It allows the Attorney General to delegate his responsibilities under the Act to "any employee of the Service or the Department of Justice" and to "confer or impose upon any employee of the United States, ... any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon officers or employees of the Service."

[12]Congress has granted broad prosecutorial powers to United States Attorneys, 28 U.S.C. § 547. This express grant of authority also carries with it the implied authority to negotiate plea bargains with respect to subsequent deportation proceedings. Deportation commonly arises as a result of a criminal prosecution, and the terms of a plea or cooperation agreement will commonly affect deportation. Since both the United States Attorneys and the INS are part of the same department of the government, if the Department of Justice wishes to have internal coordinating procedures for agreements by United States Attorneys and defendants which affect INS, that is more of an

This case is on appeal from a grant of summary judgment in favor of the government. There has been no factual determination as to what promises concerning deportation, if any, were made by the United States Attorney's Office to induce the plea bargain. Under the circumstances I would reverse and remand for further factual findings.

---

administrative concern of the Attorney General. As the Fourth Circuit noted in *United States v. Carter,* 454 F.2d 426 (4th Cir.1972), a case involving the breach of a prosecutorial promise involving multiple federal districts,

> If there be a fear that an United States Attorney may unreasonably bargain away the government's right and duty to prosecute, the solution lies in the administrative controls which the Attorney General of the United States may promulgate to regulate and control the conduct of cases by the United States Attorneys and their assistants. The solution does not lie in formalisms about the express, implied or apparent authority of one United States Attorney, or his representative, to bind another United States Attorney and thus to visit a sixteen year sentence on a defendant in violation of a bargain he fully performed.

*Id.* at 428.